Thank you very much. Good morning, Your Honours. On behalf of Manav Arora, Kirish Sareen, Sikh militants and separatists targeted Mr. Arora, not because his family was wealthy, but because in the city he lived in, Punjab, India, he was the only vendor and seller of newspapers that were critical of Sikh militants and separatists, and the militants wanted to suppress the dissemination of views, critical about them, that he was selling. The immigration judge's reasons denying Arora's asylum are misstatements of law and facts. At no time was Arora alleging a patent and practice of Hindus being persecuted in Punjab. No evidence that Hindus are persecuted in Punjab, according to the judge, were provided. Mr. Arora never alleged that. The IJ immigration judge went on to rely on the United States Department of State profile to indicate that Hindus weren't being persecuted in Punjab. The immigration judge went on to compound her mistake by alleging that since the Indian government did not sponsor Arora's persecution, it could not be grounds for political asylum. That is a clear misstatement of asylum law. Persecution may be found by cumulative specific instances of violence and harassment towards an individual by a group the government is unable to control. And that's the law of the circuit, Singh v. INS. Even in Sangha v. INS, non-government groups, this court said, need not file articles of incorporation before they can be found capable of persecution. A single isolated incident may not rise to the level of persecution, but the cumulative effect of several incidents may constitute persecution. Arora testified to four instances, and we submit he qualifies and has shown his well-founded fear of returning to India. Thank you. Well, it seems that the main problem that the IJ had with your client's testimony is that the IJ was uncertain that your client was credible, and the IJ noted specific instances in the testimony that suggested contradictions and concluded there was a problem with your client's credibility. What can you tell us about that? A review of his petition and application for asylum. Obviously, this court is aware he never completed that, and his testimony indicates all the facts to be similar except for one incident. He testifies that his mother went and received, once the Sikh militants targeted his family and his home, she got six months of medical treatment. He stated in his sworn testimony it was one and a half months. But the issue still remains over there is that his mother did receive medical treatment because the Sikh militants targeted her for persecution and him. And that is a mistake on his part. And besides the dates, he stated that on August 15, 1996, in his application, militants came to his house. That's when his mother was physically abused. On April 13, 1997, he was kidnapped by the Sikh militants and told not to oppose Sikh fundamentalism. From where was he kidnapped? Well, he was unable to state where he was able to kidnap. He didn't know whether it was from his home or outside his home. Well, that's the point. The IJ found that to be utterly incredible that somebody could have been kidnapped and not know where he was kidnapped from. And that does strike me as strange. Doesn't that strike you as strange? Yes, it does. That would be an event that would, according to your own client, that would be an event that would be burned into your mind. And yet he doesn't know where he was kidnapped from. Well, he doesn't know if he was inside the home or outside at the specific time. It is around his home. The issue is, was it inside or outside was the key issue. Well, the IJ says he couldn't remember whether he was kidnapped from a store or from his home. Is there no difference between the store and the home? No, he stated specifically it was outside his home and then he stated it was inside his home. They went looking at his store on April 20th and he ran away and he was able to escape at that time when they robbed his store of 20,000 rupees. What about the other problem here with his testimony? His I-589 application said he was tortured during the kidnapping and yet the IJ notices that in his testimony he never mentions torture. Well, isn't that suspicious? Your Honor, no question was asked. It would be suspicious if he said he wasn't tortured. He wasn't ever asked, was he beaten? But he has the burden of proving that. That is correct. It's not like anybody has a question of proving that he wasn't persecuted. He's got to come forward and everything can be looked at, including this declaration. And the IJ then measured the testimony against the declaration and one would certainly think that if he was tortured in connection with his kidnapping, which he would be in there. So the IJ identifies that as suspicious. Well, he says he was physically abused. Now, whether that rises to torture or whether that is, he doesn't describe what his abuse is. He does state he lost consciousness when he was kidnapped and he was blindfolded. But there is no specifics as to what the Sikh militants did with him once they had him in their custody, besides demanding money from his family. The IJ also notices that really what seems to be at the bottom of this whole thing is an attempt to get money and that it was the father that had the money, not him. And nothing happened to the father. And what does all that suggest? He ran the store. He was targeted because he was at the store. The money was due to his family to extort money from them, primarily because they sold, they were the only newspaper vendors selling newspapers in this city in Punjab. Now, whether his father should have been targeted, we don't know what is the strategic concerns of the persecutors. Did his father stop selling newspapers out of the store? Now, he states specifically on that point, that once he left India, he doesn't know. He does know his father doesn't work, but he's not sure whether they're still selling papers or not. He states that on page 00097, and he doesn't know. He hadn't spoken to them whether they still are selling papers, but he believed they weren't. He hadn't had any communication on that point. So his belief that they weren't is utterly unsupported by any evidence at all. He doesn't know one way or another. His father states basically that he was periodically going to work and he wasn't selling papers, but he doesn't know whether he had more than one store, whether he was selling it at the other stores. He admits that he never reported any of these incidents to the police. He was warned specifically, as well as his family members, if they did go to the police, the whole family would be killed. Who was behind these incidents? He's unable to identify any particular group. He says it was different people and all he does is say they were wearing turbans. What does all that mean? Well, we can read that page if you want me to. I can go. I think he specifically mentions who targeted his store. If I may just have a minute, Your Honor. It's on 00088. Who asked you not to sell them? The enemies who came to kill me. Who are these enemies? Militants. I don't know them. They wear big turbans, very strong, and they came with guns. What he's saying is they're Sikhs with guns and they're militants. Now, whether that means they're Sikh militants, I think is a reasonable conclusion, Your Honor. What do you do with the photographs that he submitted? The IJ says the business owned by his father appears to be prospering in these photographs. There are customers in the store. Nobody's threatening anybody, so the IJ concludes that nobody's being persecuted in this store. The issue wasn't that they were being persecuted in the store. The issue was that he wasn't meant to sell newspapers critical of the Sikh militants. If they are able to suppress his opinion, so to speak, that's the issue over here, I believe, Your Honor. Not that his father wasn't able to sell newspapers. They didn't want to sell newspapers critical of the Sikh demands for an independent homeland. Do you have anything else, Counsel? No, Your Honor. We'll hear from you on this side. Thank you very much. Good morning. May it please the Court. Jamie Dowd on behalf of the Respondent John Ashcroft. The immigration judge's decision was, as the Court pointed out, based on the fact that Mr. Arora was unable to credibly prove his asylum claim. That finding was based on numerous instances of either implausibility, inconsistency, or omissions. Most specifically, number one, the fact that his mother, he testified that she was hospitalized for one and a half months, however indicated in his application that she was hospitalized for six months. What was his explanation for that? He had no explanation for that. That's the record at 88, 89, 123, 124, 190. Additionally, as the Court pointed out, he testified that he did not know where he was when he was kidnapped. The record at 125, he specifically says, I don't know exactly whether they kidnapped me from my store or my home. He's repeated that. What protected ground did he assert on past prosecution? Political opinion. His argument was that he was persecuted because he was selling newspapers that advocated a certain political position that were in opposition to whoever these they people were that he testified were attempting to squash his selling of certain newspapers. He actually repeated again that he did not know where he was when he was kidnapped. Only on cross-examination did he eventually say that he was somewhere at his home. Additionally, the immigration judge points out that his asylum application, he claimed he was tortured. However, during his testimony, he never said anything about torture. He was specifically asked on cross-examination and answered he was blindfolded and then questioned as to why he sold certain newspapers. That's in the record at 125. But he never said anything about any adverse physical abuse or anything beyond being blindfolded and that at some point he lost consciousness and when he woke up he was questioned about selling certain newspapers. So the immigration judge's opinion lays out all these inconsistencies, implausibilities. As the court pointed out, the immigration judge was also concerned with the fact that his father was the one who owned these stores. His father was the one who was wealthy and yet his father wasn't targeted. The immigration judge also noted that he said the police would not protect him, the record at 189-190, but he never reported any incidents to the police. The immigration judge also required, since Mr. Arora was unable to provide credible testimony, that he offer some sort of documentary evidence to support his claims. However, he was unable to provide even newspaper samples from the store that he claimed was selling certain newspapers advocating political opinions, but he was unable, although he did request and his father did send pictures of the store, he was unable to provide samples of these newspapers. He was unable to provide hospital records of his mother's injury in the record at 62. Therefore, the immigration judge's failure to provide credible testimony are supported by specific and cogent reasons. Number two, aside from the credibility finding, the immigration judge found Mr. Arora was unable to support his claim that he was eligible for asylum. The immigration judge noted that Mr. Arora himself stated that the main motivation for his kidnapping was to extort money. That's on the record at 131. His asylum application states that he was abducted because of wealth. Additionally, the April 1397 incident, the store was robbed for 20,000 rupees and actually an employee of the store was warned not to go to the police. Mr. Arora himself was never, no one ever spoke to him during that incident and he was actually, I believe, in the back of the store. Mistreatment by groups of criminals motivated by financial gain does not constitute persecution on account of a protected ground. Additionally, Mr. Arora kept repeating the record at 88, 94, and 95 that he did not know who these individuals were. At one point, as opposing counsel stated, he referred to them as militants. However, he repeatedly said, I do not know them. I do not know who they are. Additionally, there's no evidence to establish that the militants imputed a political opinion to Mr. Arora. He testified that he did not belong to any political group and there's no evidence that the newsstand actually advocated any particular political opinion. There's no evidence in the record to support a finding that the newsstand sold exclusively newspapers that were in opposition to any political opinion either way. The problems arose from, Mr. Arora himself testified in the record at 130, the problems arose from the selling of three or four different newspapers, but not from the selling of every newspaper or that they only sold one particular type of newspapers. So at most, the militants opposed the selling of these certain three or four newspapers. Mr. Arora testified at 92, the record at 92, if we continue to sell those newspapers, he testified in the record at 87, that he would be harmed because the newspapers print wrong news and wrong information. In the record at 94, he states that the store was robbed because he sells newspapers and they don't want me to sell those newspapers because the news is about them. Therefore, there's no... How is it that he, since his father was the owner of the store, how is it that he's saying, how did he explain that his father isn't targeted and he's targeted even though the father owns the store? What was his explanation for that? The record, there's really no clear explanation. At some points, he states that he worked in the store and apparently his father didn't work in the store as much as he did and he was the primary one who was working behind the counter, I guess, selling newspapers. But it's clear that his father owned the stores and that his father was present in the stores at certain points and that there were other employees working in the stores. Was there any evidence of the father being persecuted? He provided no testimony that anybody in his family, other than his mother, who at some point was struck or in some way abused. But otherwise, there was no testimony that any other members of his family, including his siblings, were ever targeted in any specific way. And his parents were both still there, correct? Yes, ma'am. Was there any evidence that anything has happened to them subsequently? No, ma'am. He actually testified that his father was working in the store at some point and that as far as he knew, he didn't know whether or not they were selling the newspapers, but as far as he knew, nothing had happened to anyone there since he had left India. Because the evidence doesn't compel a conclusion contrary to the immigration judge's findings that Mr. Arroyo either did not credibly prove his claim or otherwise show he was entitled to that relief, the decision of the immigration judge should be affirmed. Thank you. Thank you. You may respond if you care to. The court has some specific questions. I have nothing to add. All right. Thank you both. The case just argued is ordered submitted and we're adjourned for the week. All rise. This court for this session stands adjourned.
judges: Trott, Callahan, Magill